Gabriel McCarthy, ISB No. 7516
McCarthy Law, PLLC
802 W. Bannock St., Ste. 201
Boise, ID 83702
Tel: (208) 343-8888
Fax: (208) 342-4200
gabe@gabrielmccarthy.com

Deval R. Zaveri (*pro hac vice pending*)
**ZAVERI TABB, APC**
402 West Broadway, Suite 1950
San Diego, CA 92101
Tel: (619) 831-6988
Fax: (619) 239-7800
dev@zaveritabb.com

Todd D. Carpenter (*pro hac vice pending*)
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 762-1900
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

*Attorneys for Representative Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT DORFMAN,<br><br>          Plaintiff,<br><br>v.<br><br>ALBERTSON'S, LLC, a Delaware Corporation, doing business in California as SAV-ON PHARMACY,<br><br>          Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>Violation of Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq.*) |

Plaintiff Robert Dorfman ("Plaintiff") brings this Class Action Complaint on behalf of himself and all others similarly situated, against Defendant Albertson's, LLC doing business in California as "Sav-on Pharmacy" ("Defendant"), and based on personal knowledge as to allegations involving him, and on information as to all other allegations, herein states:

## NATURE OF THE ACTION

1. This lawsuit is brought as a nationwide consumer class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

2. On or around June 12, 2017, Plaintiff received the first in a series of a prerecorded artificial voice telephone messages (*i.e.*, classic "robocalls") from Defendant, soliciting Plaintiff to pick up an "order," that he never placed, from its pharmacy. After receiving approximately fourteen such calls, on July 10, 2017, Plaintiff called Defendant and asked Defendant to stop calling him. Despite Plaintiff's request, Defendant continued to robocall Plaintiff, robocalling him at least seven more times.

3. Plaintiff is not a customer of Defendant's pharmacy, and did not consent to receiving such any calls. Defendant's calls were wrong number calls and violate the TCPA. The calls invaded his privacy, disturbed his peace, were a nuisance, and were harassing. Plaintiff is informed and believes that others throughout the United States have received similar robocalls from Defendant.

## PARTIES

4. Plaintiff Robert Dorfman resides in San Diego County, California, and is a citizen of California. Plaintiff is, and at all times mentioned herein was, a "person" as that term is defined in the TCPA at 47 U.S.C. § 153(39).

5. Defendant Albertson's, LLC is a Delaware corporation that maintains its principal place of business is Boise, Idaho.

6. Defendant operates retail grocery stores named "Albertsons," and pharmacies inside Albertsons named "Sav-on Pharmacy." Defendant distributes, markets, and sells pharmaceutical and retail consumer products throughout the United

States. Defendant is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39).

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Defendant and the claims set forth below pursuant to 28 U.S.C. § 1331 because this action arises from a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

9. Venue is appropriate under 28 U.S.C. § 1391(b) because Defendant maintains its principal place of business in this District.

## FACTUAL ALLEGATIONS

10. Plaintiff is the subscriber of a wireless telephone number ending in "0000."

11. Plaintiff is not a customer of Defendant's pharmacy and has not given consent to receive the calls.

12. Between around June 12, 2017 and October 11, 2017, Plaintiff received at least twenty (20) calls on his wireless telephone from Defendant, as captured in messages left on Plaintiff's voicemail and on his telephone's caller identification log.

13. Each call was a prerecorded artificial voice call that used a computerized voice and never a natural voice. Fifteen of the messages were in Spanish. Plaintiff does not speak Spanish.

14. On multiple occasions Defendants left the following prerecorded artificial voice message on Plaintiff's voicemail:

> Hello. This is courtesy call from Sav-on Pharmacy. Our address is 9831 Campo Road. We're calling to let you know your order is ready for pick-up at the pharmacy. If you have any questions, please call us at (619) 461-9170. You'll receive another call the next time your order is ready. Again, this is a courtesy call from Sav-on Pharmacy. Our address is 9831 Campo Road. We're calling to let you know your order is ready for pick-up at the pharmacy. If you have any questions

please call us at (619) 461-9170. You'll receive another call the next time your order is ready. Thank you. Goodbye.

15. The calls that were in Spanish left a similar message.

16. On or around July 10, 2017, Plaintiff called Defendant's pharmacy located on Campo Road in San Diego County. He spoke to a person who identified himself as "Shawn," and informed Shawn of the annoying robocalls and requested that Defendant stop calling and harassing him. Despite this, Plaintiff received at least seven more calls since the termination request.

17. On at least one occasion, Defendant called Plaintiff more than once per day, and more than three times in one week.

18. Not one of the messages to Plaintiff included an automated, interactive voice or key press-activated opt-out option enabling Plaintiff to make an opt-out request prior to terminating the call.

19. Not one of the messages included a toll-free number that Plaintiff could call to opt-out of future such calls.

20. Plaintiff has suffered a concrete injury-in-fact, and has a reasonable fear of future injury if the calls do not stop, because the calls invade his privacy, disturb his peace, are intimidating, a nuisance, and are harassing.

21. Plaintiff is informed and believes that other persons throughout the United States have also received such robocalls from Defendant.

## LEGAL OVERVIEW

**The TCPA**

22. The TCPA was enacted in 1991 in response to "[v]oluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes . . . ." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). Congress specifically found that "telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." TCPA, Pub. L. No. 102-243, § 2(10), 105 Stat.

2394 (1991).

23. Accordingly, the TCPA regulates, among other things, the use of artificial voice or prerecorded telephone calls. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of an artificial or prerecorded voice to make any call to a wireless number in the absence of an emergency or the "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

24. Whether the "prior express consent" may be oral, or must be in writing, depends on when the call was made and the nature of the call. *See, e.g.*, *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protections Act of 1991*, 27 F.C.C. Rcd. 1830 (Feb. 15, 2012) ("2012 FCC Order").

25. In 2012, the FCC expanded the scope of the TCPA, mandating that telemarketers obtain prior express written consent before placing a marketing call. The 2012 FCC Order at ¶ 2 (holding in part, "we: (1) revise our rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines and accordingly eliminate the established business relationship exemption for such calls").

26. The TCPA provides for statutory penalties of between $500 and $1,500 per violation. 47 U.S.C. § 227(b)(3).

**Wrong Number Calls Are A Stand-Alone Violation of the TCPA**

27. Defendant's robocalls to Plaintiff are wrong number calls. "Wrong numbers" are telephone "numbers that are misdialed or entered incorrectly into a dialing system, or that for any other reasons result in the caller making a call to a number where the called party is different from the party the caller intended to reach or the party who gave consent to be called." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protections Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) ("2015 FCC Order") at ¶ 72 n. 256.

28. The TCPA protects recipients from wrong number robocalls "*regardless* of the content of the call." 2015 FCC Order at ¶ 97 (emphasis added) (denying United Healthcare Services, Inc.'s request that wrong number healthcare-related calls be immune from TCPA liability).

29. Further, it is irrelevant whether the intended recipient of the call provided consent because "the TCPA requires the consent not of the intended recipient, but of the current subscriber (or [] customary user of the phone) . . .." 2015 FCC Order" at ¶ 72.

30. The "wrong number" called party need not ask for the calls to stop because "the TCPA places no affirmative obligation on a called party to opt out of calls . . . the TCPA places the responsibility on the caller alone . . .." *Id.* at ¶ 81 (citing 47 U.S.C. § 227(b)(1)).

31. Wrong number calls using a prerecorded or artificial voice are violations of the TCPA regardless of whether an autodialer is involved. As the FCC explained the extra protections are warranted because:

> [T]he TCPA does not prohibit calls to reassigned wireless numbers, or any wrong number call for that matter. Rather, it prescribes the method by which callers must protect consumers if they choose to make calls using an autodialer, a prerecorded voice, or an artificial voice. In other words, nothing in the TCPA prevents callers from manually dialing. *Callers could remove doubt by making a single call to the consumer to confirm identity. Even if the consumer does not answer, his or her voicemail greeting might identify him or her. Callers can also email consumers to confirm telephone numbers. Consumers who receive . . . health-related alerts to which they have consented, can reasonably be expected to respond to such email requests* to inform callers about the number reassignments.

*Id*. at ¶ 84 (italics added).

Defendant repeatedly robocalled Mr. Dorfman, even after he personally requested the calls stop, demonstrating that Defendant did not have adequate procedures to protect the public from its harassing solicitation calls. Defendant showed wholesale disregard for the TCPA and put its profit interest before its privacy obligations under the TCPA.

- 5 -
CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this Complaint against the Defendant pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following Class:

> All natural persons within the United States who received more than one artificial voice or prerecorded solicitation telephone call from or on behalf of Defendant where the number called was misdialed, reassigned, or entered incorrectly into a dialing system, and such call occurred within four years prior to the filing of the Complaint.

33. Excluded from the class definition are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, and any entity in which Defendant has a controlling interest, and the legal representatives, successors, or assigns of any such excluded persons or entities. Further excluded are Plaintiff's counsel and the assigned Judge and the Judge's family and staff.

34. This suit expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

35. ***Numerosity.*** The Class members are so numerous and geographically dispersed that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes, including based on an investigation by counsel, that the proposed class contains hundreds, if not thousands, of members.

36. ***Existence and Predominance of Common Questions of Law and Fact.*** The common questions of law and fact, that arise from Defendant's uniform pattern and practice of prohibited conduct, exist as to all Class members and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant made prerecorded calls to Plaintiff and the Class

members;

b. Whether Defendant made artificial voice calls to Plaintiff and the Class members;

c. Whether the Defendant made the prerecorded and/or artificial voice calls in question with prior express consent;

d. Whether Defendant placed wrong number calls;

e. Whether the any alleged prior express consent was compliant with the TCPA;

f. Whether Defendant's actions were willful;

g. Whether Defendant can establish a defense to liability;

h. The amount of statutory damages to be awarded to Plaintiff and each Class member per violation; and

i. Whether Defendant should be enjoined from engaging in such conduct.

37. ***Typicality.***  The claims asserted by Plaintiff in this action are typical of the claims of the members of the Classes, as the claims arise from the same course of conduct by Defendant, and the relief sought is common.  Plaintiff, like each member of the Class, received at least one prerecorded artificial voice call from Defendant, thus, Plaintiff and the Class members were exposed to virtually identical conduct.  Moreover, Plaintiff seeks the same relief as the Class members.

38. ***Adequacy of Representation.***  Plaintiff will fairly and adequately represent and protect the interests of the Class members, and he has no conflict of interest with other Class members.  Plaintiff has also retained experienced counsel who are competent in multi-party, class, and civil litigation.

39. Plaintiff seeks on behalf of himself and the Class members, on grounds generally applicable to the entire Class:  a determination of liability; the maximum statutory damages permitted by the TCPA; and attorneys' fees and costs.

40. ***Superiority.***  A class action is superior to other available methods for the fair

and efficient adjudication of this controversy because the likelihood of individual class members prosecuting separate claims is remote, and individual class members do not have a significant interest in individually controlling the prosecution of separate actions. In this action, the statutory damages to which each individual Class member is entitled are relatively small, and the expense and burden of individual litigation would make it impracticable for proposed class members to prosecute their claims individually.  It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them, thereby allowing Defendant's unlawful conduct to continue unabated.  Furthermore, even if Class members could afford such individualized litigation, the court system could not:  individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, and it would increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, uniformity of decision, and comprehensive supervision by a single court, and it presents no unusual management difficulties under the circumstances here.

## FIRST CAUSE OF ACTION
### Negligent Violations of the Telephone Consumer Protection Act
### (47 U.S.C. § 227 et seq.)

41. Plaintiff incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

42. Defendant's foregoing acts and omissions constitute numerous and multiple negligent violations of the TCPA, including but not limited to each one of the above-cited provisions of 47 U.S.C. § 227 *et seq*. and the 2015 FCC Order.

43. As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq.,* Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages for each  violation, pursuant to 47 U.S.C. § 227(b)(3)(B).  Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in

the future.

44. Plaintiff and the Class members are also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227 et seq.)**

45. Plaintiff incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

46. Defendant's calls to Plaintiff and the Class members constitute numerous violations of the provisions of the TCPA, including 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B) and the 2015 FCC Order.

47. Defendant's use of a prerecorded artificial voice in making the calls at issue, and even after Plaintiff requested they stop, demonstrates that Defendant willfully called Plaintiff and the Class members without ensuring compliance with the TCPA and the 2015 FCC Order.

48. As a result of Defendant's violations of the TCPA, Plaintiff and the nationwide TCPA class are entitled to injunctive relief, as well as an award of $500.00 to $1,500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR A JUDGMENT:

A. Certifying this case as a class action to afford the putative Class members the procedural benefit of the class action device and to avoid the multiplicity of individual actions;

B. Certifying Plaintiff as the class representative, and certifying his attorneys, Deval Zaveri of Zaveri Tabb, APC, and Todd Carpenter of Carlson, Lynch, Sweet, Kilpela & Carpenter, LLP as Counsel for the Class;

C. Awarding Plaintiff and the nationwide TCPA class members injunctive relief;

D. Awarding Plaintiff and the nationwide TCPA class members maximum statutory damages, including the trebling of damages for Defendant's willful violations, as permissible pursuant to 47 U.S.C. § 227(b)(3);

E. Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

F. Awarding Plaintiff and the Class members attorneys' fees and costs; and

G. Awarding Plaintiff and the Class members such other and further relief as may be appropriate.

/

## JURY DEMAND

49. Plaintiff requests trial by jury of all claims that can be so tried.

Dated: February 27, 2018

/s/ Gabriel McCarthy
Gabriel McCarthy, ISB No. 7516
McCarthy Law, PLLC
802 W. Bannock St., Ste. 201
Boise, ID 83702
Tel: (208) 343-8888
Fax: (208) 342-4200
gabe@gabrielmccarthy.com

Deval R. Zaveri
**ZAVERI TABB, APC**
402 West Broadway, Suite 1950
San Diego, California 92101
Telephone: (619) 831-6988
Fax:   (619) 239-7800
dev@zaveritabb.com

Todd D. Carpenter (CA 234464)
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 762-1900
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

Attorneys for Representative Plaintiff Robert Dorfman