UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT DORFMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>ALBERTSON'S, LLC, a Delaware corporation, doing business in California as SAV-ON PHARMACY,<br><br>Defendant. | Case No. 1:18-cv-00094-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Defendant Albertson's, LLC's ("Albertsons") Second Motion to Deny Class Certification Pursuant to Rule 23(c)(1). Dkt. 34. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For reasons set forth below, the Court GRANTS Albertsons' Motion.

# II. BACKGROUND

On February 27, 2018, Plaintiff Robert Dorfman filed a Class Action Complaint against Albertsons alleging that its prerecorded artificial voice telephone messages ("robocalls") related to prescription pick-up that it made on behalf of "Sav-On Pharmacy"

("Sav-on") violated the Telephone Consumer Protection Act of 1991 ("TCPA"). Dkt. 1. On May 2, 2018, Albertsons filed a motion to dismiss based on an affirmative statutory defense. Dkt. 4. The Court denied Albertsons' motion on October 18, 2018, finding the calls at issue did not, as a matter of law, fall within the "emergency purposes"[1] statutory exception to TCPA liability. Dkt. 24, at 10–11.

On November 12, 2018, Albertsons filed a Motion to Deny Class Certification Pursuant to Rule 23(c)(1), challenging Dorfman's *prima facie* ability to establish that (1) Dorfman is a representative of the class whose claims he wishes to litigate as required under Rule 23(a); (2) common questions of fact predominate over individual issues as required under Rule 23(b)(3); and (3) class action is the superior method to resolve this issue as also required under Rule 23(b)(3). Dkt. 27. The Court found that Dorfman was not a member of the class he sought to represent and no common questions of fact predominated over individual issues, but it was possible that the class could be manageable (*i.e.*, a superior method to resolve the issue). Dkt. 31.

In considering Albertsons' Motion to Deny Class Certification, the Court relied on *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, (9th Cir. 1977), where the Ninth Circuit noted that where a party cannot make a *prima facie* showing of Rule 23's prerequisites, or

---

[1] The "emergency purposes" category is a statutory exception to liability. 47 U.S.C. § 227(b)(1)(A). FCC regulations define "emergency purposes" to mean "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. 64.1200(f)(4). If the call meets the emergency purposes exception, consent is essentially irrelevant. *ACA International v. Federal Communications Commission*, 885 F.3d 687, 714 (D.C. Cir. 2018) (because emergency purpose calls "fall outside the TCPA's consent framework," "[c]onsumers may find themselves wholly unable to stave off calls satisfying the [emergency purposes] exception").

show that discovery measures probably would produce information that substantiated the class action allegations, class certification may be properly denied without discovery. *Id*. at 1313. As Dorfman had failed to make a *prima facie* showing of Rule 23's prerequisites and had not attempted to show that discovery measures were likely to produce persuasive information substantiating the class action allegations, the Court denied class certification without discovery. However, because the Court thought it possible that Dorfman could define its class in a way that complied with Rule 23, it granted Dorfman leave to amend.

Dorfman filed his First Amended Class Action Complaint on March 18, 2019. Dkt. 33. Once again, Dorfman brings this action under the TCPA on behalf of himself and all others similarly situated who received robocalls from, or on behalf of, Albertsons.

Dorfman alleges that he received a call from, or on behalf of, Albertsons for him to pick up an "order" that he had never placed at Sav-on. More specifically, he alleges that he: (1) is not a customer of Sav-on; (2) has never given Sav-on consent to call his wireless number; (3) received approximately 21 automated phone calls on his cell phone from Defendant beginning on or around June 12, 2017, regarding a prescription ready for pick-up and belonging to an unknown third party; and (4) has asked Defendant to stop calling him. *Id*. at ¶ 2. Approximately seven calls were received after July 10, 2017, when Dorfman had "asked Defendant to stop calling him." *Id*.

Pending before the Court is Albertsons' Second Motion to Deny Class Certification Pursuant to Rule 23(c)(1) filed on March 27, 2019. Dkt. 34.

### III. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a court may certify a class if the class

meet the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a). Fed. R. Civ. P. 23(a). In addition to meeting these four requirements of Rule 23(a), class actions must fall within one of the three types specified in Rule 23(b). The district court's Rule 23(a) and (b) analysis must be "rigorous." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of requirements of Rule 23(b) have been met. *Id.*

Courts are required to determine whether to certify the action as a class action at "an early practicable time." Fed. R. Civ. P. 23(c)(1). District courts have "broad discretion" to control the class certification process and to determine whether discovery will be permitted. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). A party seeking class certification is "not always entitled to discovery on the class certification issue," but in some cases "the propriety of a class action cannot be determined . . . without discovery." *Id*. The "better and more advisable practice" for a district court is to provide litigants "an opportunity to present evidence regarding whether a class action is maintainable." *Id*. "Yet where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Doninger*, 564 F.2d at 1313. In those circumstances, class certification may be properly denied without discovery. *Id.*

### IV. DISCUSSION

Here, neither party contests that Dorfman meets the requirements of Rule 23(a) to

be a class representative. Rather, Albertsons predominately challenges Dorfman's *prima facie* ability to establish that his newly proposed overall class and two sub-classes satisfy Rule 23(b)(3). Dkt. 34-1, at 3 n.1 (Albertson's "motion challenges only specific aspects of Plaintiff's class definition and Plaintiff's ability to satisfy Rule 23(b)(3)'s predominance requirement."). Dorfman contends he has met his burden and, furthermore, that he can show discovery measures that are likely to produce persuasive information substantiating the class action allegations. Dkt. 39.

Because Albertsons narrowly focuses its class certification challenge, the Court will focus its review on whether Dorfman has sufficiently amended his proposed class definitions to either satisfy Rule 23(b)(3)'s predominance inquiry or meet his burden of showing that discovery measures are likely to produce persuasive information to substantiate his class action allegations.

A.      **Plaintiff's *Prima Facie* Ability to Satisfy Rule 23(b)(3)**

The Rule 23(b)(3) predominance inquiry asks trial courts to "make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). For purposes of this analysis, "[a]n individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196–97 (5th ed. 2012)). The party seeking certification "bears the burden of showing that common

questions of law or fact predominate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001).

> 1. *Predominance of Individualized Issues of Common Questions of Fact: The Overall Class*

Dorfman defines the overall class in his First Amended Complaint as:

> All natural persons within the United States who, within the four years prior to the filing of the original Complaint in this matter, Defendant called or caused to be called, through the use an artificial or prerecorded voice, where such person was not listed in Defendant's records as the intended recipient of the call(s).

Dkt. 33, ¶ 33.[2]

Albertsons argues that class certification should be denied because no common issue predominates. Dkt. 34-1, at 6. Specifically, it contends that Dorfman's class definitions "suffer from the identical emergency purposes defect that resulted in the denial of his first putative class." *Id.*

On the other hand, Dorfman contends that "whether the general 'emergency purposes' exception can apply notwithstanding the specific FCC exception for prescription pick-up robocalls (and Defendant's failure to meet the requirements of the specific exception) is a question capable of a common answer for the entire main class." Dkt. 39, at 9. This question is similar to Dorfman's articulated common question for his first class

---

[2] None of Dorman's class definitions explicitly mention that the calls he is concerned about are prescription calls from Sav-on made by, or on behalf of, Albertsons. However, Dorfman's own complaint and all of the briefing related to the class certification make clear that he is focused on prescription robocalls. Thus, the Court will treat his definition as such, rather than as an overbroad class that relates to all robocalls made by, or on behalf of, Albertsons from 2014 to 2018.

MEMORANDUM DECISION AND ORDER - 6

definition. *See* Dkt. 27, at 4 ("Whether such wrong number robocalls fall within the emergency purpose exception (or any other exception) is a common question for the entire class."). To support his argument that a common issue predominates his amended class definitions, Dorfman again argues that the emergency purposes exception to TCPA liability does not apply to prescription pick-up robocalls (Dkt. 39, at 8–9), ignoring the Court's prior order.

The Court previously ruled that the emergency purposes exception may apply to prescription pick-up robocalls. Dkt. 24, at 10–11 ("Clearly, some prescription notification calls fall within the emergency purposes ambit."). The emergency purposes exception, a statutory exception to TCPA liability, applies to "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. 64.1200(f)(4). If a call falls within the emergency purposes ambit, then it is outside of TCPA's consumer consent-based framework. *ACA International v. Federal Communications Commission*, 885 F.3d 687, 714 (D.C. Cir. 2018).

As this Court held in two prior orders, the application of the emergency purposes exception is a fact-specific, individualized question. Dkt. 24 at 11; Dkt. 31, at 9. For example, some intended recipients of prescription robocalls may be ordering medicine whose absence would significantly impact their ongoing health. Accordingly, this Court denied class certification because it would need to make individualized inquiries into the circumstances and content of wrong number calls that class members received to determine if the messages fell within a TCPA exception. Dkt. 31, at 9.

Dorfman has not cured this deficiency in his amended class definition. No common questions prevail over individualized ones because the Court would need to make individualized inquiries into the circumstances and content of wrong number calls that class members received to determine if the messages fell within a TCPA exception. Additionally, for all non-emergency purposes calls, members of the proposed class would need to present evidence that they did not consent to the call. Dkt. 24, at 11; Dkt. 31, at 9. As class members would need to present evidence that varies from member to member, the issue is not susceptible to generalized, class-wide proof. No common question of fact predominates Dorfman's Class definition.

> 2. *Predominance of Individualized Issues of Common Questions of Fact: Sub-Class No. 1*

Dorfman defines Sub-Class No. 1 as:

> All natural persons within the United States who, within the four years prior to the filing of the original Complaint in this matter, Defendant called or caused to be called *two (2) or more times* through the use of an artificial or prerecorded voice, where such person was not listed in Defendant's records as the intended recipient of the calls.

Dkt. 33, ¶ 34 (emphasis added). The definition of Sub-Class No. 1 is identical to the overall class definition, except for the addition that Albertsons robocalled class members two or more times. The proposed Sub-Class No. 1 members would have to submit more evidence than the overall class members, as they would need to provide either testimony or documentation that they had been called two or more times by Albertsons. Similar to Dorfman's overall class definition, no common question of fact predominates Dorfman's Sub-Class No. 1 definition.

### 3. *Predominance of Individualized Issues of Common Questions of Fact: Sub-Class No. 2*

Dorfman defines Sub-Class No. 2 as:

> All natural persons within the United States who, within the four years prior to the filing of the original Complaint in this matter, Defendant called or caused to be called through the use of an artificial or prerecorded voice, where such person was not listed in Defendant's records as the intended recipient of the calls, *and after the called party requested of Defendant that no calls be made.*

Dkt. 33, ¶ 35 (emphasis added). This definition adds a new clause to the overall class definition. Thus, Sub-Class No. 2 specifies that the class would only include members that Albertsons continued to call after proposed class members requested it to stop calling.

As the Court previously held, calls made to individuals who previously notified the caller that they do not want prescription notifications "cannot be deemed to be either 'necessary' or an 'emergency.'" *Id*. at 10. However, whether class members had requested a call to stop—the unique characteristic of Sub-Class No. 2—requires an additional individualized inquiry into when and how they notified Defendant to stop calling them. Dkt. 31, at 9. As seen in this case, this inquiry is fact specific: Dorfman provided information as to when and how he requested Albertsons to stop calling him.

Because the Court would also need to make individualized inquiries into the circumstances and content of the calls other class members received, the Court agrees with Defendant that no common question predominates the issue, as the Sub-Class No. 2 is currently defined, as required under Rule 23(b)(3).

### B. Plaintiff's Ability to Demonstrate a Need for Discovery

Even if a plaintiff cannot make a *prima facie* showing that its class definition meets

Rule 23's benefits, class certification should only be denied without discovery if the plaintiff cannot show that discovery measures are likely to produce persuasive information substantiating the class action allegations. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). Ultimately, "[w]hether or not discovery will be permitted in a case of this nature lies within the sound discretion of the trial court." *Id*. at 1312–13 (9th Cir. 1977) (internal citations omitted). In making this determination, "courts look to the need for discovery, the time required, and the probability that discovery will provide necessary factual information." *Id*.

In *Doninger*, the Ninth Circuit found that the plaintiffs did not meet this burden because they rested solely upon the submission of interrogatories and "admitt[ed] that they made no attempt to obtain depositions from knowledgeable [authorities of the defendant] located nearby and readily available." *Id.* The Ninth Circuit affirmed the district court's denial of discovery even though, "the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." The Ninth Circuit reaffirmed its *Doninger* holding in *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985). Relying on *Doninger*, the *Mantolete* court held that a district court did not abuse its discretion by denying pre-certification discovery where the plaintiff merely relied on "two other complaints filed elsewhere" by similar plaintiffs against the same defendant to demonstrate a likelihood that discovery would substantiate class allegations. *Mantolete*, 767 F.2d at 1425.

As Dorfman failed to make a *prima facie* showing under Rule 23(b)(3), he has the burden of demonstrating that discovery measures are likely to produce persuasive

information substantiating the class action allegations. In his response to Albertson's first motion to deny class certification, Dorfman did not discuss how potential discovery measures were likely to produce such information. Rather, he relied on the Ninth Circuit's guidance that class certification should generally be determined based on a fully-developed record after discovery. *See generally* Dkt. 27. As a result, the Court did not analyze whether he had met his burden of demonstrating that discovery measures were likely to produce persuasive information substantiating the class action allegations.

In response to Albertsons' second motion to dismiss, Dorfman briefly brings up the potential benefits of discovery. In doing so, he cites to two cases: *Brown v. DirectTV, LLC*, 330 F.R.D. 260 (C.D. Cal. 2019), and *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019).

In *Brown*, a plaintiff brought a TCPA case against a broadcast satellite service provider for its debt-collecting calls. The *Brown* court found that the plaintiff had made a showing that her class definition met Rule 23's requirements and certified the class. It also held that the plaintiff's methodology for identifying class members were adequate. The plaintiff had proposed identifying class members by cross-referencing call logs to the defendant's receivables management system, provided evidence that defendants likely has an internal coding scheme recording "wrong numbers" in their call logs, and suggested a series of other discovery methods. *Id.* at 273–74. The defendants provided specific objections as to why the proposed methods would or would not work due to industry practices, which the district court evaluated and ultimately discarded. *Id.*

Similarly, in *Knapper*, the district court certified the class after finding that the plaintiff had adequately shown that her class definitions met Rule 23's requirements. 329 F.R.D. 238. In that case, the plaintiff sued a telecommunications service provider for making "non-emergency" debt collecting robocalls to wrong numbers. *Id.* at 240. In its certification opinion, the *Knapper* court found that the plaintiff's proposed discovery methodology was workable. *Id*. at 244. The plaintiff's expert provided in-depth analysis on how reverse lookups could be utilized to resolve consent or lack of consent on a class-wide basis, providing a seven-step process. *Id*. at 244. The district court reviewed both parties' expert opinions on how plaintiffs' proposed discovery would lead to class-wide resolution and ultimately determined the plaintiff's plan would aid class definition.

In contrast, Dorfman has not shown that his class definition meets Rule 23's requirements. Further, he provides no methodology, expert testimony, or plans on how he would use discovery to solve consent, or lack of consent, on a class-wide basis. He states that the Court should allow him to "review Defendant's records, understand its automated call procedures, and identify a methodology for determining class membership based on common evidence and methods . . . ." Dkt. 39, at 5. After citing to *Brown* and *Knapper*, Dorfman concludes by saying he "asks for nothing more at this stage than to conduct discovery, including to identify how Defendant's records can be used to determine class and subclass membership and to otherwise confirm that this case can proceed on a class-wide basis," so that "the parties can brief the Court on class certification based on a fleshed-out record" at the conclusion of discovery. *Id*. at 6. He proposes no methodology for such discovery. The Court finds that Dorfman has failed to meet his burden of demonstrating

Similarly, in *Knapper*, the district court certified the class after finding that the plaintiff had adequately shown that her class definitions met Rule 23's requirements. 329 F.R.D. 238. In that case, the plaintiff sued a telecommunications service provider for making "non-emergency" debt collecting robocalls to wrong numbers. *Id.* at 240. In its certification opinion, the *Knapper* court found that the plaintiff's proposed discovery methodology was workable. *Id*. at 244. The plaintiff's expert provided in-depth analysis on how reverse lookups could be utilized to resolve consent or lack of consent on a class-wide basis, providing a seven-step process. *Id*. at 244. The district court reviewed both parties' expert opinions on how plaintiffs' proposed discovery would lead to class-wide resolution and ultimately determined the plaintiff's plan would aid class definition.

In contrast, Dorfman has not shown that his class definition meets Rule 23's requirements. Further, he provides no methodology, expert testimony, or plans on how he would use discovery to solve consent, or lack of consent, on a class-wide basis. He states that the Court should allow him to "review Defendant's records, understand its automated call procedures, and identify a methodology for determining class membership based on common evidence and methods . . . ." Dkt. 39, at 5. After citing to *Brown* and *Knapper*, Dorfman concludes by saying he "asks for nothing more at this stage than to conduct discovery, including to identify how Defendant's records can be used to determine class and subclass membership and to otherwise confirm that this case can proceed on a class-wide basis," so that "the parties can brief the Court on class certification based on a fleshed-out record" at the conclusion of discovery. *Id*. at 6. He proposes no methodology for such discovery. The Court finds that Dorfman has failed to meet his burden of demonstrating

Similarly, in *Knapper*, the district court certified the class after finding that the plaintiff had adequately shown that her class definitions met Rule 23's requirements. 329 F.R.D. 238. In that case, the plaintiff sued a telecommunications service provider for making "non-emergency" debt collecting robocalls to wrong numbers. *Id.* at 240. In its certification opinion, the *Knapper* court found that the plaintiff's proposed discovery methodology was workable. *Id*. at 244. The plaintiff's expert provided in-depth analysis on how reverse lookups could be utilized to resolve consent or lack of consent on a class-wide basis, providing a seven-step process. *Id*. at 244. The district court reviewed both parties' expert opinions on how plaintiffs' proposed discovery would lead to class-wide resolution and ultimately determined the plaintiff's plan would aid class definition.

In contrast, Dorfman has not shown that his class definition meets Rule 23's requirements. Further, he provides no methodology, expert testimony, or plans on how he would use discovery to solve consent, or lack of consent, on a class-wide basis. He states that the Court should allow him to "review Defendant's records, understand its automated call procedures, and identify a methodology for determining class membership based on common evidence and methods . . . ." Dkt. 39, at 5. After citing to *Brown* and *Knapper*, Dorfman concludes by saying he "asks for nothing more at this stage than to conduct discovery, including to identify how Defendant's records can be used to determine class and subclass membership and to otherwise confirm that this case can proceed on a class-wide basis," so that "the parties can brief the Court on class certification based on a fleshed-out record" at the conclusion of discovery. *Id*. at 6. He proposes no methodology for such discovery. The Court finds that Dorfman has failed to meet his burden of demonstrating

that discovery measures are likely to produce persuasive information substantiating the class action allegations; it will not allow class discovery.

## V. ORDER

IT IS HEREBY ORDERED:

1. Defendant's Second Motion to Deny Class Certification Pursuant to Rule 23(C)(1) (Dkt. 34) is **GRANTED**.

DATED: January 7, 2020

David C. Nye
Chief U.S. District Court Judge